O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY COOKS, <br><br>        Plaintiff, <br><br>    v. <br><br>JO ANNE B. BARNHART, <br>Commissioner of the <br>Social Security <br>Administration, <br><br>        Defendant. | Case No. EDCV 06-00090-MLG <br><br>MEMORANDUM OPINION AND ORDER |

**I.   Factual and Procedural Background**

    This is an action for judicial review of the Commissioner's final decision denying Plaintiff's application for Social Security disability benefits. Plaintiff filed an application for benefits on August 18, 2003, alleging that she became disabled and unable to work on March 15, 2002 due to pain in her neck, shoulders, hand and wrist as well as obesity and depression. (Administrative Record ("AR") 58-60, 68.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR 28-31, 34-38.) A de novo hearing was held on March 23, 2005, before Administrative Law Judge ("ALJ") Joseph D.

Schloss. (AR 17.)

In a decision issued June 15, 2005, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. (AR 25.) The ALJ made specific findings that Plaintiff's obesity, depression, and anxiety are not considered "severe" within the meaning of the governing regulations, 20 C.F.R. § 1521; Plaintiff's musculoskeletal impairments are severe but do not medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; Plaintiff's allegations regarding her limitations are not totally credible; Plaintiff has the residual functional capacity ("RFC") to perform medium work, i.e., lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, push and pull consistent with her ability to lift and carry, and stand and/or sit for six hours in an eight-hour workday; and given this RFC, Plaintiff is able to perform her past relevant work. (AR 18, 25.)

Plaintiff timely filed a request for review of the ALJ's decision. The Appeals Council denied review on December 27, 2005. (AR 5-7.) Plaintiff then filed the instant action, claiming that the ALJ failed to properly consider the evidence submitted by multiple medical sources. (Jt. Stip. 3.)

Plaintiff Kimberly Cooks was born on October 9, 1967, and has a high school education. ( ("AR") 17, 58.) She has worked as a proof operator and data entry clerk. (AR 17.) A proof operator basically enters data and proofs checks, which includes filing and sorting checks. (AR 268.) She claims that the repetitive tasks required from this work eventually led to the development of pain, as well as numbness and tingling, in the hands, arms, neck, and shoulders. (Id.)

\\

**II.   Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld "if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Medical Evidence Relating to Residual Functional Capacity**

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2,

3

1996).[1] A RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). However, a RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id.

Since the alleged disability onset date, Plaintiff has been treated and examined by a number of physicians and has undergone a number of tests. Electromyogram ("EMG") and nerve conduction studies were performed on February 14, 2002, and August 7, 2003. The tests performed on the earlier date provided "electrodiagnostic evidence for a sensory mild CTS [carpal tunnel syndrome] bilaterally," but the findings were limited because Plaintiff was unable to complete the EMG due to excessive pain. (AR 169.) The results of the latter tests showed normal findings in both upper extremities, normal nerve conduction studies of both ulnar nerves and both median nerves, and no evidence of carpal tunnel syndrome. (AR 79-81.)

Magnetic Resonance Imaging ("MRI") scans of the right shoulder and cervical spine, performed in March and December of 2002, respectively, showed no evidence of a rotator cuff tear or significant problems with the cervical spine. (AR 105-06, 165.) However, the earlier MRI scan did reveal "bursal fluid collections in the subacromial and subcoracoid region with mild tendinosis of the supraspinatus musculotendinous junction." (AR 165.)

---

[1] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy....Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc).

Dr. Grace Hunter, D.O., performed an orthopedic evaluation of Plaintiff and, on October 11, 2003, issued a five-page report detailing her findings. (AR 184-88.) Dr. Hunter reported that Plaintiff has "decreased sensation in all fingertips on her right hand and in the median distribution of her left hand," and "some tenderness to palpation in the cervical spine." (AR 187.) Dr. Hunter gave the following opinion as to Plaintiff's functional limitations:

> She is able to do pushing, pulling, lifting, and carrying 50 pounds occasionally and 25 pounds frequently. Walking and standing can be done without restrictions. Sitting is unrestricted. Bending, kneeling, stooping, crawling, and crouching can be done without restrictions. Walking on uneven terrain, climbing ladders, or working at heights can be done on a frequent basis. Use of hands for fine manipulative movements is limited to occasional basis. Gross manipulative movements can be done on a frequent basis with bilateral hands.

(Id.)

A SSA reviewing physician, Dr. Myung-Ha Sohn, reviewed Plaintiff's medical file[2] and, on October 31, 2003, completed a form entitled "Physical Residual Functional Capacity Assessment." Through a series of check-boxes, Dr. Sohn opined that Plaintiff's physical limitation permitted her to occasionally lift fifty pounds; frequently lift twenty-five pounds; stand and/or walk for about six out of eight hours a day; and push and/or pull without limitation. (AR 190.) Dr.

---

[2] In response the query "Is a treating or examining source statement(s) regarding the claimant's physical capacities in file?", Dr. Sohn checked a box indicating yes and in the space provided wrote that he examined Dr. Hunter's report. (AR 195.) Given this response, it in unclear whether Dr. Sohn reviewed the entire medical record.

Sohn based her conclusion on Dr. Hunter's examination, the August 7, 2003 EMG and nerve conduction study, and the results of the two MRI scans. (AR 190-91.) Contrary to Dr. Hunter, however, Dr. Sohn concluded that Plaintiff does not have any manipulation limitations. (AR 195.)

Based on the results of the EMGs, nerve conduction studies and MRI scans, the ALJ credited Dr. Sohn's findings and concluded that Plaintiff retains the RFC to perform medium work. To the extent that the opinions of treating and examining physicians conflicted with this conclusion, the ALJ rejected their opinions.

The ALJ specifically rejected the opinions of the following physicians on the basis that they are inconsistent with "the diagnostic imaging, EMG, and nerve conduction studies," (AR 20, 22-23):

**a.   Richard J. Lis, M.D., Orthopedic Surgeon**

Richard J. Lis, M.D., began treating Plaintiff in January of 2002. (AR 18, 116-73.) Plaintiff was initially diagnosed with right shoulder impingement syndrome and right carpal tunnel syndrome. (AR 173.) On April 29, 2002, following the initial EMG and nerve conduction studies, as well as the initial MRI, Dr. Lis diagnosed Plaintiff with overuse syndrome/cervical brachial syndrome of both upper extremities, right shoulder impingement syndrome, and bilateral carpal tunnel syndrome. (AR 161.) Dr. Lis noted that the EMG and nerve conduction studies were positive for mild bilateral carpal tunnel syndrome and the MRI showed a right shoulder impingement. (Id.) Physical examinations initially showed limited range of motion and positive impingement in the right shoulder and right wrist. (AR 138, 151, 161, 166, 168, 173.) Plaintiff's condition improved with physical

therapy, and by September of 2002 Plaintiff's range of motion in her shoulder and fingers had significantly improved. (AR 124, 129, 143.) Clayton E. Patchett, M.D., Dr. Lis' colleague, began treating Plaintiff upon Dr. Lis' retirement in November of 2002. (AR. 19.) Dr. Patchett did not modify the diagnosis, and stated that Plaintiff should be limited to "light work." (AR 109-10.)

On July 22, 2002, Dr. Lis completed a form entitled "Work Status Report" that, through the use of check-boxes, stated that Plaintiff "remains totally disabled from any work until approximately [unintelligible]." (AR 139.) Dr. Lis completed two additional Work Status Reports on August 14 and September 4, 2002. (AR 126, 131.) Dr. Lis stated on the August 14 report that Plaintiff is able to perform work that does not require her to lift or carry over five pounds; to lift her right arm above her shoulder; does not require more than limited twisting, rotating, gripping, or wrist extension of her right hand; and does not require more than limited use of her right arm. (AR 126.) Dr. Lis gave the same assessment on the September 4 report, except that only the twisting and rotating, not gripping or extension, of the right hand need be limited. (AR 131.)

**b.   Charles T. Resnick, M.D., Orthopedic Surgeon**

Charles T. Resnick, M.D., began treating Plaintiff on April 28, 2003, to provide a second opinion for Dr. Lis, and diagnosed her with bilateral carpal tunnel syndrome. (AR 89-93.) Dr. Resnick referred Plaintiff to the Pasadena Rehabilitation Institute ("PRI"), and in progress reports submitted to Dr. Resnick in early 2004, physicians at PRI diagnosed Plaintiff with cervical myofascial pain syndrome, possible cervicogenic etiology, mild tendonitis in the shoulder, and bilateral carpal tunnel syndrome. (AR 206, 218-19, 247, 250.)

Plaintiff was discharged from a Structured Pain Program at PRI in early March, which provided short term relief from neck and shoulder pain, and little to no relief form wrist and forearm pain. (AR 204-07.) Throughout this time, Dr. Resnick continued to treat Plaintiff.

On March 11, 2004, Dr. Resnick filled out a form note that stated Plaintiff is scheduled to return for an appointment on April 27, 2004, and that she should not engage in heavy lifting or repetitive, strenuous gripping/grasping with either hand. (AR 198.)

    **c.   Brent W. Miller, M.D., Orthopedic Surgeon**

Brent W. Miller, M.D., performed an agreed medical examination, apparently for worker's compensation purposes, on March 7, 2005, and issued a report on the same day detailing his findings and opinions. (AR 268-77.) After recounting the results of the physical examination and reviewing Plaintiff's medical records, Dr. Miller stated that Plaintiff has "bilateral upper extremity overuse syndrome" and "significant levator scapulae syndrome", and "her physical complaints are great enough to warrant surgical intervention." (AR 276.) Dr. Miller concluded that Plaintiff "is an absolute wreck both physical[ly] and psychologically" and "is unable to continue in her usual and customary job activities." (Id.)

    **d.   ALJ's Finding**

The ALJ credited Dr. Hunter's opinion to the extent that it stated Plaintiff can perform medium work, but dismissed Dr. Hunter's opinion that Plaintiff experiences any limitations in the bilateral

upper extremities.[3] (AR 20.) The ALJ stated only that there was nothing in the objective evidence to support this finding. (Id.)

**IV.  Discussion and Analysis**

It is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine credibility. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989). Thus, the ALJ determines which medical opinions should be given the most weight in light of the general rule in this circuit that, among the three types of physicians—-(1) treating physicians, i.e., those who treat the claimant; (2) examining physicians, i.e., those who examine but do not treat; and (3) non-examining physicians, i.e., those who neither examine nor treat—-the most weight should be given to the opinion of a treating source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

An ALJ should accordingly give deference to a treating medical source's opinion as to the nature and severity of an impairment if it is well supported and not inconsistent with other substantial evidence. SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). This is "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Factors that are to be used in weighing the opinion of a treating physician include: (1) length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship;

---

[3] The Court assumes that the ALJ was referring to Dr. Hunter's opinion that Plaintiff can use her hands for fine and gross manipulative movements on an occasional and frequent basis, respectively. This is the only portion of Dr. Hunter's opinion that the ALJ did not adopt.

9

(4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527(d).

The ALJ may reject the opinion of a treating medical source if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester*, 81 F.3d at 830-31; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Nevertheless, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In addition, if the opinion of a non-treating source is based upon independent clinical findings that differ from those of the treating medical source, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041.

Plaintiff contends that the ALJ improperly rejected the opinions of Drs. Lis, Resnick, Miller, and Hunter regarding Plaintiff's physical limitations. Plaintiff received long-term treatment under the care of Dr. Lis (and when he retired, Dr. Patchett) and Dr. Resnick. The ALJ contends that the opinions of these physicians are inconsistent with the MRI scans, EMG, and nerve conduction studies. However, their opinions were informed by multiple physical examinations and, in the case of Dr. Resnick, extensive reports from the PRI. Moreover, Dr. Lis accounted for the results of the first set of EMG and nerve conduction studies, and both MRIs, and Dr. Resnick's opinion accounted for all such testing. The results of these tests may

not lend support to the treating physicians' opinions, but they are not inconsistent with their opinions. SSR 96-2p, 1996 WL 374188, at *1. In other words, Plaintiff may still suffer from the limitations described by the treating physicians, notwithstanding the test results. Thus, they alone are not substantial evidence and are an improper basis for rejecting Drs. Lis' and Resnick's opinions.[4]

Dr. Hunter's opinion, however, does represent substantial evidence. Where the opinion of a nontreating physician rests on objective clinical tests, it is substantial evidence and provides a legitimate basis for discrediting the opinion of a treating physician. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). Dr. Hunter conducted an extensive physical examination and reached a conclusion regarding Plaintiff's physical limitation. It was within the ALJ's discretion to credit Dr. Hunter's opinion and reject the opinions of the treating physicians to the extent that they differed from Dr. Hunter. (AR 20.) The ALJ also acted within his discretion in rejecting Dr. Miller's opinion in favor of Dr. Hunter's opinion. (AR 21-22.)

However, the ALJ also rejected Dr. Hunter's opinion concerning the physical limitations on Plaintiff's use of her hands, which was consistent with the opinions of the treating physicians, stating that it was not supported by the objective evidence. This was error. Drs. Lis, Resnick, and Hunter held the opinion that Plaintiff suffers from bilateral carpal tunnel syndrome and is extremely limited in the use

---

[4] The factors listed in section 404.1527(d) of the regulations also generally weigh in support of their medical opinions: Dr. Lis and Dr. Resnick treated Plaintiff for eleven months and one year, respectively; Dr. Lis examined her on a near-monthly basis; both physicians consistently described Plaintiff's physical limitations; and both are orthopedic surgeons working within their specialty.

of her hands. The negative MRI scans, EMG and nerve conduction studies may not support these opinions, but they are not inconsistent with the opinions and thus do not provide substantial evidence for rejecting them. Nor does the opinion of Dr. Sohn, a reviewing physician, provide a proper basis for rejecting the treating physicians' and Dr. Hunter's opinions regarding Plaintiff's limitations in the use of her hands. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

The Court finds that the ALJ decision to reject the opinions of Plaintiff's treating and examining physicians relating to Plaintiff's use of her hands was not based on substantial evidence in the record.

## V. Conclusion

For the reasons stated above, the Court concludes that the ALJ erred by failing to provide a basis for discrediting Plaintiff's allegations of pain in her wrists and the physical limitations it imposes.

Accordingly, **IT IS ORDERED** that this matter be **REMANDED** to the defendant Commissioner for the specific purpose of reevaluating Plaintiff's RFC in view of the finding that Plaintiff has limitations in using her hands due to carpal tunnel syndrome.

DATED: January 26, 2007

_____
MARC L. GOLDMAN
United States Magistrate Judge